**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| JOHANNA DORHOUT, individually and on behalf of all others similarly situated, | **CLASS ACTION** |
| *Plaintiff,* | Case No. |
| vs. | **JURY TRIAL DEMANDED** |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | |
| *Defendant.* _____/ | |

## CLASS ACTION COMPLAINT

1.  Plaintiff, Johanna Dorhout ("Plaintiff"), brings this action against Defendant, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY ("Defendant"), to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

## NATURE OF THE ACTION

2.  This is a putative class action pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., (the "TCPA").

3.  This case involves a scheme by defendant State Farm Mutual Automobile Insurance Company (and by and through its agents) to market its services through the use of a lead-generator marketing company in plain violation of the TCPA.

4.  As described more fully below, State Farm issues insurance quotes and sells its products and services derived through illegal telemarketing text messages placed by its agents, who obtain consumer leads through a third-party lead-generator company (the "Company").

5.  To promote its services, Defendant engages in aggressive unsolicited telemarketing, harming thousands of consumers in the process. Defendant utilizes aggressive marketing to push its products and services without regards to consumers' rights under the TCPA.

6. State Farm delegated its marketing duties to, and directed and conducted marketing through its agents and ratified the conduct of its agents by accepting the referrals and sales generated by the agents' text messages on behalf of State Farm. And, while State Farm has sought to minimize their direct involvement in the illegal telemarketing calls on behalf of State Farm (presumably to avoid TCPA liability), State Farm nonetheless actively participated in the telemarketing calls through its own actions and/or the actions of its agents acting at the direction of State Farm and on State Farm's behalf.

7. As alleged with greater specificity herein, Defendant contacted, and/or caused to be contacted on their behalf, Plaintiff and Class Members on their cellular telephones for non-emergency purposes, without Plaintiff's and Class Members' prior express consent within the meaning of the TCPA.

8. Plaintiff properly alleges injuries in fact, which are fairly traceable to Defendant's unlawful acts, and are likely to be redressed by a favorable judicial decision. Among other harms caused by the unlawful text messages at issue, receiving the unwanted text messages resembles the kind of harm associated with invasion of privacy and intrusion upon seclusion.

9. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of herself and members of the class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

10. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or

more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

11. Venue is proper in the United States District Court for the Central District of Illinois pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant's headquarters are located in this District, Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services from within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred from within the State of Illinois and, on information and belief, Defendant has sent the same text messages complained of by Plaintiff to other individuals from within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the State of Illinois.

## PARTIES

12. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Lancaster County, Nebraska.

13. Defendant is an Illinois company whose principal address is located at One State Farm Plaza, Bloomington, IL, 61710.

14. Defendant directs, markets, and provides its business activities throughout the State of Illinois.

15. Unless otherwise indicated, the use of Defendant 's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, vendors, and insurers of Defendant.

## LEGAL BASIS FOR THE CLAIMS

16. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing … can

be an intrusive invasion of privacy.…" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

17. In 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D. Ill., Dec. 31, 2012).

18. Accordingly, the entity, such as State Farm in this case, can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under such circumstances, the entity is deemed to have initiated the call through the person or entity.

19. On January 4, 2008, the FCC reiterated that "a company on whose behalf a telephone call is made bears the responsibility for any violations." *Id*. (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)). In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 ("2008 FCC Declaratory Ruling"), CG Docket No. 02-278, 23 FCC Rcd. 559, 564-65 (¶ 10) (2008).

20. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See In re Rules & Regulations Implementing the TCPA, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd. 12391, 12397 (¶ 13) (1995).

21. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of . . . section 227(b) . . . that are committed by third-party telemarketers." *In the Matter of The Joint Petition Filed by DISH Network, LLC, the United States of America, and the States of California, Illinois, North Carolina, and Ohio for Declaratory Ruling*

4

*Concerning the Telephone Consumer Protection Act (TCPA) Rules, et al.*, CG Docket No. 11-50, 28 F.C.C.R. 6574, 6574 (¶ 1) (May 9, 2013) ("May 2013 FCC Ruling").

22. The May 2013 FCC Ruling specifically held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC RCD. at 6586 (¶ 34).

23. The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n.107.

24. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer may have apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28 FCC Rcd at 6592 (¶ 46).

25. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." Id. at 6592-93 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id*. at 6593 (¶ 46).

## FACTS

26. Beginning at least on January 30, 2025 through at least February 12, 2025 (as shown below), Defendant sent or caused to be sent multiple telemarketing text messages to Plaintiff's residential telephone number ending in 2131 ("2131 Number"):



27. Defendant's text messages were transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

28. The text messages were from a "Dave" with "Jake Bucher State Farm" located in Nebraska about the auto insurance. The text message further encouraged Plaintiff to "Call or text 402-333-1127."[1]

29. State Farm holds out "Jake Bucher State Farm" and its other agents as being authorized to speak on its behalf. *See* https://jakefromsfomaha.com/ (last accessed April 2, 2025).

30. Jake Bucher State Farm consists of agents of State Farm. The duties of Jake Bucher State Farm, as State Farm agents, include marketing and selling State Farm insurance products.

31. On information and belief, Jake Bucher, as the owner of the Jake Bucher State Farm insurance agency, authorized, caused and directed the placement of the telemarketing calls to his agency of persons who appear to be interested.

32. Through the above-described unsolicited and unwanted telemarketing, Defendant invaded Plaintiff's privacy and violated Plaintiff's rights under the TCPA.

33. Moreover, State Farm actively participated in the telemarketing scheme that is the subject of this case.

34. Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in Defendant's property, goods, or services, i.e., Defendant's personal insurance products.

35. The information contained in the text message advertises Defendant's various promotions, which Defendant sends to promote its business.

36. Plaintiff received the subject texts within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district. Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

---

[1] 402-333-1127 is the office phone number for Jake Bucher's State Farm agent website, available at https://www.statefarm.com/agent/us/ne/omaha/jake-bucher-811zc7377ak (last accessed April 2, 2025).

37. Defendant's texts were not made for an emergency purpose or to collect on a debt owed to the United States, pursuant to 47 U.S.C. § 227(b)(1)(B).

38. At no point in time did Plaintiff provide Defendant with her express written consent to be contacted.

39. Specifically, Plaintiff never completed any type of form that clearly and conspicuously authorized Defendant to contact Plaintiff's residential cellular telephone with marketing text messages.

40. Plaintiff has no existing business relationship with Defendant.

41. Plaintiff is the subscriber and sole user of the 2131 Number and is financially responsible for phone service to the 2131 Number.

42. Plaintiff's 2131 Number is her residential telephone number used for personal purposes. Plaintiff's 2131 Number is her primary way of being contacted in her home.

43. Plaintiff registered her 2131 Number with the national do-not-call registry on December 16, 2023, and has been registered at all times relevant to this action.

44. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

45. The text messages originated from telephone number 402-333-1127, a number which upon information and belief are owned and operated by Defendant or on behalf of Defendant.

46. On information and belief, Defendant sought a financial benefit from the telemarketing text messages it placed to Plaintiff and the putative class members, as it attempted to derive business from these messages.

47. Defendant's unsolicited text messages caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff and caused disruption to her daily life.

**State Farm's Unlawful Marketing**

48. State Farm requires its insurance agents to represent the company to consumers, including non-customers.

49. State Farm knowingly and actively accepted business that originated through the illegal telemarketing text messages complained of herein.

50. After obtaining Plaintiff's contact information, State Farm's agents contacted Plaintiff and Class Members to offer them various insurance products.

51. State Farm knew or should have known that the offering of its insurance products arose from telemarketing text messages made on its behalf.

52. State Farm maintains control over its agents' actions, both as to telemarketing and other activities.

53. State Farm directs the content of its agents' advertising.

54. Upon information and belief, State Farm retains absolute and unilateral control over the content of its advertising.

55. For example, State Farm requires that all advertising that directly or indirectly identifies State Farm, such as call scripts, must be approved prior to use by its agents.

56. State Farm sometimes helps pay for its agents' advertising.

57. State Farm also issues to its agents manuals, forms, records, computer and electronic files, equipment and other materials, supplies and services, which agents are expected and directed to use and follow.

58. State Farm requires use of these materials and information and maintains strict controls over the information's use and dissemination. State Farm retains ownership of these materials.

59.     State Farm directs the geographical area for which its agents may take credit and earn fees.

60.     State Farm specifically retains the right to place whatever limitations it pleases upon what applications for insurance its agents are permitted to submit to State Farm.

61.     At all relevant times, State Farm had the right to instruct each and every one of its agents not to submit applications for insurance that were obtained through telemarketing.

62.     State Farm expressly and publicly authorizes its insurance agents to solicit new customers through the use of telephones.

63.     Specifically, in May 2005, State Farm filed a petition with the Federal Communications Commission *admitting* that State Farm's exclusive agents "are permitted to telemarket to State Farm's customers on State Farm's behalf…"

64.     In the petition, State Farm conceded that that it depends almost entirely on its agents to both represent the company to consumers and provide service to policyholders.

65.     As State Farm noted in this petition, its agents are responsible for answering policyholders' questions, providing updates to consumers when adjustments in coverage may be appropriate, *soliciting applications for coverage*, submitting claims, and in some cases, paying claims.

## LEGAL CLAIMS

**Unlawful Acts Committed By State Farm's Agents**

66.     With regard to torts committed by an agent, the Restatement provides:

67.     § 7.04 Agent Acts With Actual Authority

>  A principal is subject to liability to a third party harmed by an agent's conduct when the agent's conduct is within the scope of the agent's actual authority or ratified by the principal; and
>
>  (1) the agent's conduct is tortious, or
>
>  (2) the agent's conduct, if that of the principal, would subject the principal to tort liability.

*See* RESTATEMENT (THIRD) OF AGENCY § 7.04 cmt. d(2) (2006).

68. The purpose of State Farm's agents is to serve State Farm by soliciting applications for insurance from consumers on behalf of State Farm.

69. Respective insurance agents had the actual authority of State Farm to send the complained-of texts.

70. State Farm's agents were, and are, authorized to hire third parties, including the Company that contacted Plaintiff, to perform marketing, including telemarketing.

71. State Farm and its agents have contracted with telemarketing companies to transmit telemarketing text messages to communicate with consumers such as Plaintiff on her cellular telephone.

72. Based on the facts alleged with specificity herein, and additional facts that Plaintiff may learn through discovery, State Farm directed and authorized its sub-agent to make the calls to Plaintiff and Class Members, and State Farm is liable for such calls.

73. In the alternative, due to the facts alleged with specificity herein, and additional facts that Plaintiffs may learn through discovery, State Farm directed and authorized its co-agent to make the calls to Plaintiff and Class Members, and is liable for such calls.

**Apparent Authority**

74. State Farm gave their agents substantial power to affect their legal relations with third parties, including the Company and consumers generally.

75. State Farm cloaked its agents with apparent authority to enter into advertising arrangements on its behalf, including the telemarketing company used by Defendant's agents giving rise to this action.

76. For example, and as referenced above, State Farm filed a formal petition with the Federal Communications Commission in 2005 on behalf of its agents, asking for a declaratory ruling under the TCPA (the "Petition").

11

77. The Petition asked that the FCC issue a ruling that State Farm could "graft" its Existing Business Relationship ("EBR") exemption to the National Do Not Call Registry prohibitions, so as to permit its agents to make telemarketing calls, just like State Farm could.

78. State Farm's requested Petition was granted. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991: Request of State Farm for Clarification and Declaratory Ruling*, CG Docket No. 02-278, Declaratory Ruling, 20 FCC Rcd. 13664, 13666-13668 (2005).

79. In granting the Petition, the FCC noted that State Farm's agents are authorized to perform almost all communications with the customers of State Farm including telemarketing on behalf of State Farm.

80. The FCC, however, explicitly warned State Farm that State Farm's agents would otherwise have to comply with the TCPA, and that State Farm would be liable if its agents engaged in telemarketing in violation of the TCPA:

> We take this opportunity to reiterate that a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call.

*Id.* at 13667 (¶ 7).

81. The significance of the Petition, and the ruling, was that State Farm placed the public on notice that its agents would be making calls on its behalf, and that calls made by State Farm agents would be treated under the TCPA *just as if State Farm made the calls*.

82. State Farm cloaked their agents in apparent authority specifically as to legal relations between their agents and the public, and to hire third parties such as the Company hired in this case to perform telemarketing, sufficient to support vicarious liability pursuant to the TCPA.

83. State Farm agents understand that they are permitted to enter into telemarketing contracts on behalf of State Farm.

84. Upon information and belief, the telemarketing company had authority to use State Farm's "trade name, trademark and service mark[s]," as discussed in the May 2013 FCC Ruling making said Company an apparent agent of State Farm.

85. By providing information to Defendant's telemarketing company so it could transmit telemarketing text message to customers via its agents, State Farm "allow[ed] the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including . . . access to detailed information regarding the nature and pricing of the seller's products," as discussed in the May 2013 FCC Ruling. As such, the company is an apparent agent of State Farm.

86. Customer information was transferred, including the Plaintiff's information, directly to local insurance agents. Thus, State Farm created an apparent agency relationship as the Company had the "ability . . . to enter consumer information into the seller's sales or customer systems," as discussed in the May 2013 FCC Ruling.

87. By hiring the telemarketing company to transmit text messages calls on behalf of its agents to generate sales leads, State Farm "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

88. Similarly, by accepting these contacts, the telemarkeing company "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of State Farm, as described in the Restatement (Third) of Agency. As such, the Company is an agent of State Farm.

89. The telemarketing company was reasonable in believing that the dozens of State Farm agents it worked with had authority to bind State Farm because the Company knew that its calls were resulting in actual quotes for, and sales of, State Farm's insurance.

90. These quotes and sales were being performed by State Farm itself.

**Ratification**

91. In the alternative, State Farm ratified the illegal telemarketing activity of its agents by knowingly accepting the benefits of these activities when they accepted leads. These leads provided State Farm and its agents with additional business prospects.

92. Upon information and belief, State Farm and its agents were aware of the Company's illegal marketing and that text messages were sent without express written consent between State Farm, its agents and the consumers, when State Farm and its agents accepted the marketing leads.

93. In subsequently issuing quotes for insurance as part of this marketing scheme, State Farm manifested its assent to the public, the telemarketing company it contracted with and its agents, that they were each a knowing participant in the telemarketing company's and its agents' telemarketing complained of herein.

94. In participating in these calls, State Farm manifested an intent to accept the benefit of the text message campaigns; including text messages that were made on its behalf but that did not result in an insurance quotes or sales.

95. Even if State Farm did not realize that specific insurance quotes were generated through third party sources, State Farm made a conscious choice to issue quotes for insurance without adequate knowledge of the source of the quotes.

96. Even if State Farm did not realize that specific insurance products were sold from leads that were generated through a third party, State Farm made a conscious choice to issue insurance policies without adequate knowledge of the source.

97. Because it accepted the text messages' benefits, State Farm cannot avoid the burden associated with its ratification.

98. Vicarious liability for TCPA violations can arise out of ratification. As the FCC stated:

> As commonly understood under modern agency principles reflected in the Third Restatement, such apparent authority can arise in multiple ways, and does not require that "a principal's manifestation must be directed to a specific third party in a communication made directly to that person. Rather, "a principal may create apparent authority by appointing a person to a particular position." Similarly, "a principal may permit an agent to acquire a reputation of authority in an area or endeavor by acquiescing in conduct by the agent under circumstances likely to lead to a reputation." And "[r]estrictions on an agent's authority that are known only to the principal and the agent do not defeat or supersede the consequences of apparent authority for the principal's legal relations" with others.". In such circumstances, for example, the presence of contractual terms purporting to forbid a third-party marketing entity from engaging in unlawful telemarketing activities would not, by themselves, absolve the seller of vicarious liability.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6586, n 102 (internal citations omitted).

99. In its Petition, State Farm asked for permission for its agents to receive the benefit of State Farm's EBR with existing customers.

100. State Farm asked for this permission because EBR is an affirmative defense to certain TCPA claims.

101. In doing so, State Farm ratified its own liability for TCPA violations arising out of calls where any EBR might be at issue.

102. In other words, State Farm agents should not be afforded State Farm's EBR as a defense, but for State Farm not to be liable for calls that run afoul of that defense.

103. The benefits of the relationship State Farm requested from the FCC must be accompanied by the burden.

104. This complaint has been drafted without the benefit of discovery from State Farm. However, the FCC has emphasized that due to the behind-the-scenes nature of relationships between sellers and telemarketers, Courts should consider affording TCPA plaintiffs discovery to establish the basis for vicarious liability for a call which on its face promotes the seller's products or service: "At a minimum, evidence of these kinds of relationships—which consumers may acquire through discovery, if they are not independently privy to such information— should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would

15

not sensibly assume that the telemarketer was acting as the seller's authorized agent." May 2013 FCC Ruling, 28 FCC Rcd at 6592-593 (¶ 46).

## CLASS ALLEGATIONS

### PROPOSED CLASS

105. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

106. Plaintiff brings this case on behalf of a Class defined as follows:

> **Do Not Call Registry Class: All persons in the United States who from four years prior to the filing of this action (1) were sent a text message by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of promoting Defendant's products and services; and (5) for whom Defendant claims (a) it did not obtain prior express written consent, or (b) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff.**

107. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the several thousands, if not more.

### NUMEROSITY

108. Upon information and belief, Defendant has placed violative calls to cellular telephone numbers belonging to thousands of consumers throughout the United States who are registered on the Do Not Call registry. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

109. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

110. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

    a) Whether Defendant violated 47 C.F.R. § 64.1200(c);

    b) Whether Defendant's conduct was knowing and willful;

    c) Whether Defendant violated the privacy rights of Plaintiff and members of the class;

    d) Whether Defendant is liable for damages, and the amount of such damages; and

    e) Whether Defendant should be enjoined from such conduct in the future.

111. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

112. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

113. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

114. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class

resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

115. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
### Violation of the TCPA, 47 U.S.C. § 227
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

116. Plaintiff repeats and realleges the paragraphs 1 through 115 of this Complaint and incorporates them by reference herein.

117. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

118. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[2]

119. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

---

[2] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

120. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

121. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

122. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

123. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

b) An award of actual and statutory damages for Plaintiff and each member of the Class;

c) An order declaring that Defendant's actions, set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited text messaging activity, and to otherwise protect the interests of the Class;

e) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases, or other itemizations associated with the allegations herein, including all records, lists, electronic databases, or other itemizations in the possession of any vendors, individuals, and/or companies contracted, hired, or directed by Defendant to assist in sending the alleged communications.

Dated: April 3, 2025

**Shamis & Gentile, P.A.**
*/s/ Andrew Shamis*
Andrew J. Shamis, Esq.
Illinois Bar No. 6337427
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Telephone: 305-479-2299

*Counsel for Plaintiff and the Class*